Argued and submitted August 4, affirmed September 27, 2006

In the Matter of the Compensation of
Matthew J. Rigel, Claimant.

## VENCOR NURSING CENTER,
*Petitioner,*

*v.*

## Matthew J. RIGEL,
SAIF Corporation,
and Royale Gardens Health Care,
*Respondents.*

02-09491; A129431

144 P3d 963

Jerald P. Keene argued the cause and filed the briefs for petitioner.

Heather L. Holt argued the cause and filed the brief for respondent Matthew J. Rigel.

Jerome P. Larkin argued the cause and filed the brief for respondents SAIF Corporation and Royale Gardens Health Care.

Before Landau, Presiding Judge, and Schuman, Judge, and Lipscomb, Judge pro tempore.

SCHUMAN, J.

**SCHUMAN, J.**

Employer seeks review of an order of the Workers' Compensation Board setting aside its denial of claimant's claim for medical treatment for his current low back condition. We review the board's legal conclusions for errors of law, ORS 183.482(8)(a), and its findings for substantial evidence, ORS 183.482(8)(c). Because we conclude that the board did not err, we affirm.

The facts are largely undisputed. Claimant, a certified nurse's aide, injured his back in 1994 while working for SAIF's insured. SAIF accepted the claim as a lumbar muscle strain. Claimant received treatment from Dr. Sinclair. The claim was closed in November 1995, and claimant's aggravation rights on that claim expired in November 2000.

In November 1996, claimant began working for employer, insured by Constitution State Service Company (CSSC). In November 1999, claimant again injured his back at work. He returned for treatment to Sinclair, who initially diagnosed a low back strain, which CSSC accepted. Diagnostic imaging revealed that claimant had degenerative changes and ruptured discs at L4-5 and L5-S1.

Dr. Corson, an orthopedist who examined claimant on behalf of CSSC, concluded that claimant's November 1999 injury had caused the disc ruptures and that the ruptures were superimposed on preexisting lumbar degenerative disc disease. Sinclair concurred in Corson's report. On November 22, 2000, CSSC amended its acceptance to include disc ruptures at L4-5 and L5-S1.

On July 16, 2001, CSSC and claimant entered into a Claim Disposition Agreement (CDA) whereby he fully released all benefits regarding the 1999 injury claim with the exception of medical services and assistance from the Re-employment Assistance Reserve.

In May 2002, claimant returned to Sinclair with increased back pain. A June 2002 MRI showed degeneration at L4-5 and L5-S1, with large central disc herniations at those levels. Sinclair submitted a request to CSSC for epidural steroid injections. On October 23, 2002, CSSC denied

claimant's claim for further medical treatment, explaining that the treatments were not related to the accepted conditions of low back strain and L4-5 and L5-S1 disc ruptures. Claimant requested a hearing and also asked CSSC to amend its original acceptance to include "herniated nucleus pulposus at L4-5 and L5-S1." CSSC denied the request, explaining that its November 22, 2000, acceptance of the L4-5 and L5-S1 disc ruptures encompassed the currently claimed conditions. Claimant again requested a hearing.

One of the issues at the hearing was whether, by accepting claimant's L4-5 and L5-S1 disc ruptures, CSSC had also accepted claimant's preexisting degenerative disc disease. The board held that, although CSSC's November 22, 2000, acceptance of L4-5 and L5-S1 disc ruptures did not encompass his preexisting degenerative condition, the condition for which claimant was currently being treated was the same condition that CSSC had accepted in November 2000, and it was therefore compensable. CSSC seeks judicial review.

CSSC asserts that the board erred in determining that the current condition is compensable, because the board failed to consider whether claimant's preexisting degenerative disc disease has combined with the accepted L4-5 and L5-S1 disc herniation to cause it to worsen. *See* ORS 656.005(7)(a)(B).[1] As CSSC explains, it "adduced medical evidence reasonably indicating the major contributing cause of the subsequent progression or enlargement of those disc herniations was an underlying, preexisting degenerative disc disease that separately compromised the integrity of the disc and supportive structures." CSSC contends that the board mistakenly failed to consider that evidence.

We have a different understanding of the board's order. There was also medical evidence that claimant's

---

[1] ORS 656.005(7)(a)(B) provides:

"If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

preexisting degenerative disc disease was not the cause of the worsening of his herniated discs. Dr. Parsons, a neuro-surgeon, expressed the opinion that "the L4-5 and L5-S1 disc herniations are encompassed within the already accepted L4-5 and L5-S1 disc ruptures." He reported that, even though claimant had degenerative disc disease that predated his November 28, 1999, injury, the herniations were caused by the work injury. The board cited Parson's medical opinion in support of its findings. We conclude that the board did indeed consider employer's evidence that claimant's preexisting con-dition had caused the accepted disc herniations to become worse, but rejected it, favoring instead evidence that claim-ant did not have a combined condition, but suffered from the same condition that CSSC had previously accepted—*i.e.*, that the herniated disc condition itself had become worse, but without influence from a separate preexisting condition. Thus, the board implicitly rejected CSSC's view that claim-ant's current condition results from a combination of the com-pensable disc herniations and a preexisting degenerative disc disease. That determination is a factual one, and we conclude that it is supported by substantial evidence. The board did not err in setting aside CSSC's denial.

Affirmed.